UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLIE EARL COLE | CIVIL ACTION |
| VERSUS | NO: 17-3649 |
| BP EXPLORATION & PRODUCTION INC, ET AL. | SECTION: "J"(5) |

## ORDER & REASONS

Before the Court are two motions filed by Defendants, BP Exploration & Production Inc., BP America Production Company, and BP p.l.c. (collectively "BP"):[1] a *Daubert Motion to Exclude the General Causation Opinions of Plaintiff's Expert, Dr. Jerald Cook* **(Rec. Doc. 51)** and a *Motion for Summary Judgment* **(Rec. Doc. 52)**. Plaintiff, Willie Earl Cole, opposes both (Rec. Docs. 55 & 54, respectively), and BP filed replies to each (Rec. Docs. 61 & 62, respectively). Additionally, Plaintiff has filed a *Motion for Extension of Deadlines* **(Rec. Doc. 53)**. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Defendants' motions should be granted, and Plaintiff's motion should be denied.

## FACTS AND PROCEDURAL BACKGROUND

The instant action is a "B3" case arising out of the 2010 Deepwater Horizon ("DWH") oil spill in the Gulf of Mexico. B3 cases involve "claims for personal injury

---

[1] Halliburton Energy Services, Inc., Transocean Deepwater, Inc., Transocean Holdings, LLC, and Transocean Offshore Deepwater Drilling, Inc. join in the Daubert Motion and Motion for Summary Judgment.

1

and wrongful death due to exposure to oil and/or other chemicals used during the oil spill response (e.g., dispersant)." *See In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2021 WL 6053613, at *10 (E.D. La. Apr. 1, 2021). These cases were originally part of a multidistrict litigation ("MDL") pending in this Court. During the course of the MDL proceedings, this Court approved the Deepwater Horizon Medical Benefits Class Action Settlement Agreement. *Id.* at *2. The B3 plaintiffs either opted out of the class action settlement agreement or were excluded from its class definition. *Id.* at *10 n.3.

Plaintiff, Willie Earl Cole, was employed in the DWH oil spill response cleaning beaches for approximately twelve months. (Rec. Doc. 51-1, at 2). This work, Cole alleges, exposed him to crude oil and chemical dispersants which caused Plaintiff to develop a multitude of adverse medical conditions, including cellulitis, skin boils, blistering, crusting, dryness/flaking, inflammation, redness or swelling, itching, lesions, peeling, scaling, sinusitis, bronchitis, upper respiratory infection, decreased sense of smell, facial pain or sinus pain, nasal congestion/discharge, throat irritation, flu-like symptoms, nausea, vomiting, diarrhea, abdominal cramps, dizziness, congestion, wheezing, bronchitis, depression, headache, eye burning and irritation. (*Id.*).

In the case management order for the B3 bundle of cases, this Court noted that, to prevail, "B3 plaintiffs must prove that the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response." 2021 WL 6053613, at *11. The Court further observed that the issue of causation "will likely

be the make-or-break issue of many B3 cases," which "will require an individualized inquiry." *Id.* Here, Cole relies on Dr. Jerald Cook to provide expert testimony as to general causation. (Rec. Doc. 51-3). Dr. Cook is a retired Navy physician with a master's degree in environmental toxicology and a fellow of the American College of Occupational and Environmental Medicine. (*Id.* at 5). He is board certified in occupational medicine, public health, and general preventative medicine. (*Id.*). Dr. Cook's report is a non-case specific, general causation expert report that has been used by multiple B3 plaintiffs. (Rec. Doc. 51-1, at 3). It mentions no plaintiff by name, including Cole, and it does not address any specific plaintiff's work on the spill response or the nature, duration, or type of exposure any plaintiff had to any particular toxin. *See generally* (Rec. Doc. 51-3). Further, in the report, Dr. Cook evaluates four categories of injuries or disease to see whether they could be caused by exposure to crude oil or dispersants. (*Id.*). Dr. Cook concluded that three of the categories of injury – respiratory, dermal, and ocular – can result from exposure to such. (*Id.*).

Now, BP has filed the instant *Daubert Motion to Exclude the General Causation Opinions of Dr. Cook* and *Motion for Summary Judgment* premised on the Court's granting of BP's Motion to Exclude. In response, Plaintiff has filed a *Motion for Extension of Deadlines* asking the Court to continue all scheduling deadlines and to refrain from ruling on dispositive motions pending the completion of general causation discovery. The Court will address each motion in turn.

## DAUBERT MOTION

### I. LEGAL STANDARD

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert may testify if: (1) the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) the expert's testimony "is based on sufficient facts or data"; (3) the expert's testimony "is the product of reliable principles and methods"; and (4) the principles and methods employed by the expert have been reliably applied to the facts of the case. Fed. R. Evid. 702. The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining whether expert testimony is admissible under Rule 702. Both scientific and nonscientific expert testimony are subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment of "whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). When expert testimony is challenged under *Daubert*, the party offering the expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence. *Moore v. Ashland Chem. Co.,* 151 F.3d 269, 276 (5th Cir. 1998).

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). A number of nonexclusive factors may be relevant to the reliability analysis, including: (1) whether the

technique at issue has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the potential error rate; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see also Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has considerable leeway in determining how to test an expert's reliability.").

## II. DISCUSSION

To begin, BP points out that four other Sections of this Court, and this Court itself, have excluded Dr. Cook's expert report in similar B3 cases.[2] (Rec. Doc. 51-1, at 7). BP argues that in this case, the Court should exclude Dr. Cook's opinions for the same reasons. (*Id.*). Judge Africk identified four primary bases for which Dr. Cook's general causation opinions were unreliable, and Judge Ashe found that just one of these four reasons was substantial on its own to permit exclusion, Dr. Cook's failure to identify a harmful dose of exposure necessary to cause the plaintiff's specific medical condition.[3] Specifically, Judge Ashe found that Dr. Cook had failed to identify

---

[2] Dr. Cook's latest report, dated May 31, 2022, is, BP contends, "a modest evolution of his March 14 report."
[3] *See Novelozo v. BP Expl. & Prod.*, No. 13-1033, 2022 WL 1460103 (E.D. La. May 9, 2022) (Africk, J.); and *Murphy v. BP Expl. & Prod.*, No. 13-1031, 2022 WL 1460093 (E.D. La. May 9, 2022) (Africk, J.); *Johns v. BP Expl. & Prod. Inc.*, No. 17-3304, 2022 WL 1811088 (E.D. La. June 2, 2022) (Ashe, J.); *Johnson v. BP Expl. & Prod. Inc.*, No. 17-3308, 2022 WL 1811090 (E.D. La. June 2, 2022) (Ashe, J.);

5

a "particular chemical" or the "level of exposure to any such chemical as would be necessary to cause the specific symptoms . . . that is to say, the dose necessary to cause the reported reaction." *Johns*, 2022 WL 1811088, at *5. Here, the Court begins with the issue both Judge Africk and Ashe determined merited exclusion of Dr. Cook's expert testimony: whether his report identifies a particular chemical or the level of exposure to any such chemical as would be necessary to cause Cole's specific adverse health conditions.

"'Scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are *minimal* facts necessary to sustain the plaintiffs' burden in a toxic tort case." *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996) (citing *Wright v. Willamette Industries, Inc.*, 91 F.3d 1105, 1107 (8th Cir. 1996)) (emphasis added). In a subsequent toxic tort case, the Fifth Circuit, applying the above standard, held that an expert's testimony "[d]id not establish general causation" because the expert "provide[d] no clue regarding what would be a harmful level of [chemical] exposure." *Seaman v. Seacor Marine*, 326 F. App'x 721, 726 (5th Cir. 2009). Therefore, B3 Plaintiffs in these toxic tort cases "must prove, at a minimum, that exposure to a certain level of a certain substance for a certain period of time can cause a particular condition in the general population." *Williams v. BP Expl. & Prod.*, No. 18-9753, 2019 WL 6615504, at *8 (E.D. La. Dec. 5, 2019) (citing *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007)).

---

*Macon v. BP Expl. & Prod. Inc.*, No. 17-3548, 2022 WL 1811135 (E.D. La. June 2, 2022) (Ashe, J.); *Murray v. BP Expl. & Prod. Inc.*, No. 17-3582, 2022 WL 1811138 (E.D. La. June 2, 2022) (Ashe, J.); *Street v. BP Expl. & Prod. Inc.*, No. 17-3619, 2022 WL 1811144 (E.D. La. June 2, 2022) (Ashe, J.).

Further, in a BELO case,[4] the Fifth Circuit upheld the exclusion of a plaintiff's expert because he "was unable to answer questions regarding how much time [the plaintiff] spent scooping up oil, how, where, or in what quantity Corexit was used, how exposure levels would change once substances were diluted in seawater, or how [the plaintiff's] protective equipment would affect exposure." *McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 433 (5th Cir. 2020). However, the court went on to reason that the general causation expert need not determine the precise level of exposure, but he must, at least, analyze the plaintiff's probable exposure level. *Id.* (citing *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661 (5th Cir. 1999), and *Clark v. Kellogg Brown & Root, L.L.C.*, 414 F. App'x 623 (5th Cir. 2011) in which the experts engaged in analysis of the plaintiff's workspace to determine a probable exposure level). Accordingly, here, to be reliable and, thus admissible, Dr. Cook's report must, at a minimum, analyze Cole's probable level of exposure.

BP argues that Dr. Cook's failure to identify the harmful level of exposure for any chemical or any medical condition is the most fundamental deficiency. (Rec. Doc. 51-1, at 19). Because the law requires an expert to identify the harmful level of exposure for each chemical and each condition, BP contends that this failure is especially problematic because Dr. Cook is investigating multiple allegedly toxic chemicals, and Cole is alleging multiple adverse health conditions. (*Id.* at 11). Judge

---

[4] "[B]oth BELO plaintiffs and B3 plaintiffs must prove that the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response . . . [n]otably, experience has shown that causation is a critical element—if not the critical element—in BELO cases, and therefore will likely be the make-or-break issue for many B3 cases as well. Additionally, the issue of causation in these toxic tort cases will require an individualized inquiry." 2021 WL 6053613, at *11.

7

Ashe, in his recent opinions, emphasized that Dr. Cook's report failed to include even a single mention of a specific chemical. *See, e.g., Johns*, 2022 WL 1811088, at *5. Instead, Judge Ashe found that Dr. Cook's report "refers generally to oil, dispersants, and volatile organic compounds," and he "never identifies any particular chemical to which [the plaintiff] was exposed, much less the level of exposure to any such chemical as would be necessary to cause the specific symptoms of which [the plaintiff] complains – that is to say, the dose necessary to cause the reported reaction." *Id*. Because Plaintiff used the same report by Dr. Cook here, Dr. Cook's report fails to identify a single specific chemical.

Cole admits that "Judge Ashe's conclusion is factually correct in that Dr. Cook did not rely on quantitative exposure data in reaching his general causation opinions." (Rec. Doc. 55, at 2). In an attempt to articulate better than past plaintiffs why Dr. Cook does not identify quantitative exposure data in his report, Cole contends that Dr. Cook and the scientific community use measurement/ effect criteria like the "exposure-response," "ever/never exposed," and "job exposure matrix" because BP avoided or prevented the recording of exposure and dose data. (*Id*. at 11). Cole argues that Dr. Cook's failure to identify a particular chemical or the level of exposure to any such chemical as would be necessary to cause the specific symptoms is not a bar to finding that his methodology is proper and reliable under *Daubert*. (*Id*. at 15). However, while this argument may work in response to BP's contention that Dr. Cook did not follow the proper methodology, it does not prevail in response to BP's assertion that Dr. Cook does not identify the harmful level of exposure for any chemical or any

8

medical condition. As the Fifth Circuit has held, identification of the harmful level of exposure to a chemical is one of the "minimal facts necessary to sustain the plaintiff's burden in a toxic tort case." *Allen*, 102 F.3d at 199.

Cole argues that the reason neither he nor any other plaintiff can present this specific quantitative data is due to BP's failure to act during the spill to preserve evidence of the workers' actual total exposure to specific chemicals in the weathered oil. (Rec. Doc. 55-??, at 1). In reply, BP asserts that Cole's argument misses the mark because in forming an opinion on general causation, "an expert may consult the universe of epidemiology and toxicology literature studying the chemicals at issue," and "[t]he expert does not depend upon environmental sampling data taken as part of the incident in question." (Rec. Doc. 51-1, at 13). "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury." *Knight*, 482 F.3d at 35. Therefore, the fundamental question in this general causation inquiry is whether the chemicals, weathered oil, and dispersants to which Cole alleges he was exposed can cause the conditions he alleges. Notably, this inquiry does not depend upon environmental sampling data taken as part of the incident. As Judge Vance stated, "Dr. Cook was not prevented from consulting the relevant scientific and medical literature on the harmful effects of oil to determine whether a relevant chemical has the capacity to cause the harm alleged by plaintiff in the general population. He was not limited to data from the Deepwater Horizon oil spill, and in fact did rely on studies from previous oil spills." *Dawkins v.*

9

*BP Expl. & Prod., Inc.*, No. CV 17-3533, 2022 WL 2315846, at *10 (E.D. La. June 28, 2022).

Here, Dr. Cook's report fails to identify a single chemical and, instead, refers generally to oil, dispersants, and volatile organic compounds. Moreover, even if Dr. Cook's report were to identify a specific chemical present in the crude oil, weathered crude oil, or dispersants, his report fails to establish a harmful level of any chemical to the general population. Thus, Dr. Cook's report fails to satisfy Fifth Circuit's minimal fact required: scientific knowledge of the harmful level of exposure to a chemical. As Dr. Cook even points out himself, "[t]here is a toxicology maxim that the dose determines the poison." (Rec. Doc. 51-3, at 27). Yet, Dr. Cook fails to identify the dose of any such chemical that would result in the adverse health effects contained in his report, and his report is therefore unreliable and inadmissible.

## MOTION FOR SUMMARY JUDGMENT

### I. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th

Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## II.   DISCUSSION

As in the cases decided by this Court and Judges Africk, Ashe, Vance, and Morgan, because Dr. Cook's general causation opinions are excluded, Defendants are entitled to summary judgment dismissing Cole's claims. Cole has no other medical expert for general causation, and expert testimony is required. Therefore, Cole has failed to create a genuine issue of material fact with respect to his claims that his injuries were caused by exposure to oil and dispersants.

## MOTION FOR EXTENSION OF DEADLINES

Here, even if this Court were to grant Plaintiff his requested relief, it would be fruitless, as other sections of this Court have already found. *See Harrison v. BP Expl. & Prod.*, 2022 WL 2438502, at *7 (E.D. La. June 30, 2022) (Morgan, J.) ("[A]ssuming *arguendo* Plaintiff's allegation that Defendants prevented studies of oil cleanup workers by not collecting data related to the Deepwater Horizon oil spill is true, Cook could have attempted to support an opinion as to the dose necessary to cause Plaintiff's symptoms by relying on the universe of relevant epidemiology and toxicology literature studying the spill or by relying on the work of Dr. Cole. He did neither."); *Peairs v. BP Expl. & Prod. Inc.*, No. 17-03596, R. Doc. 65 at p. 2 (E.D. La. July 19, 2022) (Vance, J.) ("the issues involved in the sanctions motion are not outcome determinative of defendants' motion in limine on the issue of admissibility of Dr. Cook's report, or on the merits of defendants' summary judgment motion."). Moreover, as Judge Vance reasoned, "even if the Court were to consider the 'ever/never' exposure model data, that would not cure the lack of 'fit' between Dr. Cook's general causation report and the facts of plaintiff's case." *Peairs*, No. 17-03596, R. Doc. 65 at p. 4.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion to Exclude the Causation Opinion of Plaintiff's Expert, Dr. Jerald Cook* **(Rec. Doc. 51)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' *Motion for Summary Judgment* **(Rec. Doc. 52)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's *Motion for Extension of Deadlines* **(Rec. Doc. 53)** is **DENIED.**

**IT IS FURTHER ORDERED** that all claims of Plaintiff, Willie Earl Cole, against Defendants, BP Exploration & Production Inc.; BP America Production Company; BP p.l.c; Halliburton Energy Services, Inc.; Transocean Deepwater, Inc.; Transocean Holdings, LLC; and Transocean Offshore Deepwater Drilling, Inc., are **DISMISSED with prejudice.**

New Orleans, Louisiana, this 28th day of July, 2022.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE